Good morning, and may it please the Court. I am Aaron May, on behalf of Petitioner-Appellant Hector Camarena, and I'd like to request two minutes for rebuttal. Mr. Camarena was wrongfully deprived of the one-year sentence reduction he earned after completing the Residential Drug Abuse Treatment Program, and the District Court erred when they adopted the magistrate's report finding otherwise. The central issue here, the one that this case really boils down to, is whether Mr. Camarena had a settled expectation and or a liberty interest in the sentence reduction he was awarded. To the extent he did, he was wrongfully deprived of it. The case law and the facts in this case compel a conclusion that he did, in fact, have a settled expectation. The cases in the circuit require that once a BOP makes a determination of eligibility and then informs the Petitioner or the inmate of that determination, at that point in time, they have a settled expectation that they will receive the sentence reduction. Mr. Camarena was informed of that decision on February 3, 2000, and at that point, he had a settled expectation. It was a binding decision by the BOP that he would be reduced or that he would be released early. And at that time, there was no grounds for rescission except for the specifically enumerated grounds set forth in the BOP program statement. Let me ask you about the liberty interest. In these other cases we had, Bowen in court, it was a little bit different because it was a retroactive application of a new rule. Here we have the same rule. The rule didn't change. It's just that his circumstances changed. So why do you have the same settled expectation if the rule is always the same? The settled expectation is the same if Mr. Camarena was in the same exact position as Mr. Bowen and Mr. Court were at the time of February 3, 2000. They all received the same form. And at that time, this Court has held that the determination by the BOP is a binding one. It looked at the rules and regulations of the Bureau of Prisons and the practice of the Bureau of Prisons and said that when the BOP makes a determination, it's a binding one. They're held to it. And a prisoner who receives that determination, that information, would have a settled expectation. And if you look at all the ---- Is it the completion of his treatment? Does that have anything to do with the analysis? Well, I would say, looking at the context of what we're dealing here, we're dealing with a drug rehab program, which takes a lot of effort and willpower on the behalf of the prisoner. And, yes, once a determination is made, they have to complete their requirements, what they have to do. But they have to be given that opportunity to complete those requirements. And the way the BOP guidelines are set forth, it talks about a failure to complete the program. And if you look at the Court's decision in court, it talks about once the determination is made, there's a single condition left. And that condition, it says, is solely within the means of the prisoner, and that's completion of the RDAP program, the Residential Drug Abuse Treatment Program. So the way this whole mechanism is structured, it's to make sure that the inmate completes his rehab in the way that he is clean and sober, he attends his group sessions. He does what he needs to do to complete that. But if he's not given the opportunity to complete the program, that's a separate issue, and that's what's going on here. If the BOP doesn't allow him to complete the program, that's not Mr. Camarena failing to complete the program. That's the BOP not allowing him to meet his obligations. Well, but it's not that they're not letting him meet his obligations. They're saying that he's no longer eligible for the benefits that this program would provide. That's what they're saying, isn't it? Well, I think the eligibility determination is a binding one. So they made the determination that he's eligible, and they're bound by that decision. There's nothing in the BOP guidelines that say you can go back on your eligibility determination once an INS detainer comes down. That may be an initial criterion that's used in dishing out who gets who is eligible in the first instance, but once that determination is made, it's a binding one, and they can't go back and change it on that ground. Well, let's assume that you're right on the liberty and the process. He had the opportunity to go through this internal appeal system, did he not? I assume he did have the opportunity, but he should have been given a pre-deprivation hearing before allowing the BOP to just come in and make a determination after the fact. Had he been successful in his appeals, he wouldn't be out anything, would he? I mean, they would be able to then put him back in drug treatment program, and he would then meet the criteria. Let's say he was successful and it turns out he was the wrong guy or there was a wrong determination made. Why wouldn't those appeals be sufficient to put him back in the position he should have been in if there were a mistake? The – there's no reason that they – I think the onus should be on the BOP to provide a hearing before they deprive him of the liberty interest as opposed to trying to correct the deprivation after the fact. There's no reason for the BOP not to provide that procedure and that process beforehand. Who knows how long that process may take and how long it may drag out. It could take years, and by that time, he could have served out his entire extra year in the sentence that was imposed. I think because we're dealing with days in prison and we don't – there's no requirement that the administrative process happen in a speedy and timely manner, there's no guarantee that that will be resolved before any error is corrected in that process. Mr. May, there really isn't anything to decide here if we have a hearing before BOP, is there? I disagree. I think – well, first – Are there any factual issues? There – I would back up and say, first, even if there isn't, that due process has other values besides in the individual case whether he would have an ability to right a wrong. Due process, he should have his day in court or his day before a hearing, and to make sure that if there are mistakes, that they are corrected. Now, whether or not there are mistakes here, I believe he won't be deported, and the record – we don't have to reach that, but I think the INS is just wrong that he's going to be deported. So whether that can be brought up in the process that's – that would come about is a question for a later day, but the fact is that he wasn't given any process and he has no ability to even put that case. But if the BOP's – if the BOP's position is if you have a detainer lodged against you by the INS, then you are no longer eligible for this program, then the only factual inquiry is, is there in fact a detainer been lodged by the INS, which there has been and which I don't think – which I don't think Mr. Camarena disputes, correct? His real problem is, is that he can't challenge the detainer at this point. Well, that is an additional problem, absolutely. But it's a huge problem. And the additional problem, though, is – I'm sorry. The ground for – there is no ground for rescission based upon receipt of an INS detainer. There may be initial determination or criterion in using viviat whether he becomes eligible in the first instance. But they made a determination that he was eligible. And once that determination is made, the same – the same occurs in good time credits or parole revocation. You may have a certain set of criteria that are used to make your initial determination, but it's a different question when you – when you take that back. And if you look at the BOP program statements – Are you saying they can never take it back? Well, only on the grounds set forth either by rules or regulations. And the grounds set forth are – there's nothing in the regulations, by the way, that allow them to rescind anything. The only thing that even touches on it would be the program. But there's nothing that says they can't either. Would you say it's neutral on that point? I would – it would probably be neutral on that. But this Court held that it was a binding determination in Bowen and Court. So at least we have the precedent there that said it is a binding determination. Just like a district court makes a final judgment, if two years down the road, parties have a different – you know, oh, I could have brought this argument up, but they forgot to do it, well, you have your – you have your opportunity and it's passed. Now, the receipt of an INS detainer letter is nowhere listed as a grounds for rescission of a BOP early release. It's only a criteria for the initial allocation. And that's crucial. In all the cases that the appellee cites deal with the initial determination of eligibility as opposed to the rescission of it. And we have to – I mean, as this Court eloquently stated in Bowen and Court, BOP has to live by the rule of law, too. If they didn't put this as a criterion in for rescission, a prisoner in Mr. Camarena's situation has the expectation that he will be receiving the sentence reduction. He even communicated that. The BOP can't just by whim say, well, we're going to change our process now. He has a set of expectations. And at that point, he developed a liberty interest. So, Counselor, what is it that you want us to do today? You want us to hold that he has a right to a hearing? I would – Or you want us to hold that BOP has – cannot withhold this liberty interest, the one-year sentence reduction from him? I would twofold. My first request for relief is that his eligibility and his sentence reduction be reinstated and order appellee Slade to release him on a date one year in advance than his current release date. Alternatively, if the Court holds that it is not a binding determination, then he should at least – To release him to a halfway house. I'm sorry, Your Honor? To release him to a halfway house. I don't think that's necessary. I think he should – he's entitled to the year sentence reduction. I think the BOP – whether he gets into where he serves that final year is not as important as the fact that he serves one year less. Alternatively, I would – You guys aren't there – well, it's not our role, but if there is an INS detainer, they're not eligible for the halfway house programs, right? That's – well, the BOP has the discretion whether to place him in that or not. And I don't – I'm not requesting that he – this Court order he be placed there. The Court does have the ability to order a Pele-Slay to release him a year earlier, and then a Pele-Slay can decide where to place him during that final year. The second half is if the Court doesn't agree with the first point, that he should at least be given a pre-deprivation hearing. He wasn't given that hearing, so he should be reinstated to the point he was beforehand. Could I ask you what would be the difference between that hearing and the one he had? He didn't have a hearing. He just got a – Well, he – but he didn't take his – he filed his appeal within an administrative appeal, didn't he? No. I don't believe he did. Oh, maybe I misread. I thought he – he did file a protest. He did file – well, I guess if – maybe that is an informal resolution attempt. You're correct. He did file an informal resolution attempt. But then he didn't take any further appeals of that denial. He filed in the district court. I don't – Refresh my memory. Was there a provision when he first went into this program that he would not be eligible for an early release if an INS detainer were lodged? The program – I think the INS detainer rule – it's not exactly a regulation, but the program statement came about in 96 or 97. I believe he participated in the residential drug abuse treatment program maybe in 98, but he participated in other drug programs prior to that time. I'll return to this in a moment. Okay. Thank you. May it please the Court, good morning. Assistant United States Attorney Sarah Robinson on behalf of the FLEJE Slave. Your Honors, we contend three things. First of all, there was no determination of early release ever made. There's nothing in the record to support that the BOP ever made a determination of early release for Mr. Camarena. Second, that this Court has previously decided that there is, in fact, no liberty interest and no due process violation in the BOP's community corrections requirement, and no violation of the Constitution, no liberty interest in the finding that inmates with detainers are ineligible to participate in the community corrections portion of the residential drug abuse treatment program because the rational basis for that in McLean and in previous cases, Jax, has shown that inmates who have detainers against them present significant flight risks, and that is the rational basis on which this Court has determined early release. Well, one of the matters that's argued for here is that, all right, so that may be the case, but he did go through the program, and he was advised that he successfully completed the program, and that his time was going to be cut by one year. So give him that benefit that he earned, and then just turn him over to the INS. Respectfully, Your Honors. Why does he have to sit in prison for another year while the INS just sits back and waits? Your Honor, he was never advised. How long has the INS known that this defendant was in prison? Years. Years. And then you file it just right after he's, you know, been given the benefit. Now, how do you account for that? He wasn't given the benefit, Your Honor. That's the first point. He was told he was eligible. Well, how do you account for the fact that the INS filed a detainer when it did, when it had, what, 15 years or 14 years to file that detainer? Your Honor, the INS. Explain that to me, would you please? You know, if I could, I would. Well, there's nothing in the record that addresses that question. And the INS is not the only agency that files detainers. State legal determinations, if an inmate has. Oh, I know that. That's a different. Well, those are also detainers, Your Honor. Those are also detainers. That is, an inmate may, after serving a Federal sentence, be turned over to State authorities. Oh, sure. And those get filed when they get filed. That there's a way, that there's a way to bring those to the force and get them resolved early. As I recall. Your Honor, there's no requirement. You know. I know there isn't a requirement. I know. Well, why wait that long? Is that fair? I don't know, Your Honor. Is that decent? I don't think that's before the court today. Is that nice? That's all right. It's before me. I'd like to know. If I had an answer, I would surely tell you. Well, the answer to me is that the INS, as far as I'm concerned, that the INS just delays until the last minute and then hits these people. That's the answer. I understand that's the Court's concern. Well, why don't you get the answer, and if you want, just send the letter to the Court. Tell me what the answer is here. I'd like to know. Your Honor, if the Court would like me to do some additional briefing on that question, I would be happy to do that. I would like that. The question is whether you're splitting hairs when you make the statement that there's no determination of early release. There was a determination of eligibility. Yes. Correct? Correct. And that's what I think counsel is arguing on behalf of Mr. Camarena, is that once the determination of eligibility is made, that you can't backtrack from that. I think that is the argument that counsel is making, Your Honor. Why doesn't court control in that circumstance? Because court is a different case. As this Court. Well, every case is a different case. But the rules were changed in court. That is, court concerned inmates who were convicted of, as I recall, it was unarmed bank robbery, and initially they were told that that was not an offense which would preclude them from being eligible for early release. Subsequently, the BOP changed the definition of the offenses, violent offenses or nonviolent offenses, which were subject to exclusion from the 3621 early release program. And the inmates were placed in a position where the change definition was being applied retroactively to them. That's not the situation for Mr. Camarena. When he enrolled in this program, the exclusion for inmates who had detainers to participate in the community corrections phase was already in place. He already knew that. That was the change. But he didn't have a detainer. And so then they put him in the program, and he has no detainer. And then he later gets a detainer. So he has no recourse, basically, you're saying. You know, unfortunately, that is what I'm saying, Your Honor. Let me ask you this. This is what was bothering me. We see a lot of cases where immigrants are confused one for another, particularly where they have Gomez-Gomez or Lopez-Lopez as their last name. Let's say his name were Gomez-Gomez from Guatemala, but they issue, thinking he's a different Gomez-Gomez, they issue an I.S. detainer on him. Does that mean somebody in that situation has no remedy because they've issued it on him? Maybe they're just flat wrong. They've got the wrong Gomez-Gomez. And so he can't ever get this one-year relief. He's just stuck. Is that the answer? No, it's not the answer, Your Honor. What would be the relief there? The relief there would be that he would have filed an administrative remedy saying, gee, I'm the wrong guy. I'm not Mr. Gomez from Guatemala, not Mr. Gomez from Nicaragua. He never said that. He never said that in the district court. He never said that in the BOP. And he certainly didn't say it in this Court. He's never alleged that the detainer did not apply to him. That's just not the case in front of this Court. Well, what he's saying is that he should at least get an opportunity before you take this away from him to have a hearing. And that's incorrect, Your Honor. And the reason is there's no liberty interest in his participation. It's a discretionary program. In fact, the BOP and the case law has recognized that an inmate could, in fact, fulfill all parts of the program. No detainer, go through the drug treatment program, go through the community corrections program, and still the BOP could, within its discretion, refuse to release that inmate one year early. Does that typically happen? Probably not. But the case law has recognized that within the confines of a discretionary program such as this one, it could happen. So what happens if — what recourse does Mr. Camarena have if he serves the full sentence because he's got this detainer? He's then released, INS picks him up, and somebody at INS says, you know something, we're really not interested in pursuing this any further, or, gee, the facts aren't as we thought they were. And now Mr. Camarena has served a full sentence, for which he could have been out a year earlier. He has no way of challenging the INS detainer at this point. Any relief for Mr. Camarena? Is he just out of luck? Yes, Your Honor, he's out of luck. But he's not serving any more time than what he was originally given. And, in fact, the record demonstrates that Mr. Camarena is receiving the statutory good time. But if he had known, if he had known at this point, if the INS could figure out at this point that it really isn't interested in pursuing the detainer, then BOP presumably would reinstate his eligibility for the one-year drug rehabilitation program, which he's completed, and he would be out a year earlier out of prison. I agree, Your Honor. But there is not, unfortunately, a remedy for every single wrong. Mr. And I'm not conceding, by the way, Your Honor, that this is wrong, because the discretion lies within the BOP to determine who is eligible to participate in this program. And this Court has validated both of those requirements, the community requirement and the detainer exclusion requirement. So in that sense, I believe that the program, and we have urged that the program is constitutional. There's no impermissible burdening of a constitutional interest. There just isn't a liberal interest here. But we're encouraging people to go through these programs, aren't we? Yes, Your Honor. I mean, that's a public policy. Absolutely. We want people to go through those programs. So do we want them to go through the program and then dump them after they've been declared eligible? I mean, is that good public policy? Well. We know these programs work if people are treated like human beings, you know, and if they get some support when they get out. Of course. And they go to whatever it is, you know, Alcoholics Anonymous or Cocaine Enough. And I think the countervailing consideration there, Your Honor, you're certainly right that these programs are useful. And it's even better if an individual can make a transition into the community corrections, because there's follow-up, people get followed. But the countervailing and legitimate penological interest that the BOP has is that individuals with detainers present a significant flight risk once they're placed in community corrections. They can just walk away. If we want to change the detainer exclusion. Do we have any statistics on that? The record demonstrates, Your Honor, that when I believe it was mentioned in McLean that when the BOP promulgated this regulation, it was put out, the detainer exclusion regulation, it was put out for public comment. It was published in the Federal Register. And there was comment from I think the American Psychological Association that individuals who are under the risk of being placed in deportation proceedings, removal proceedings, once they're placed in a community corrections setting with virtually little or no, I'll say little, supervision from the BOP, it creates a situation where they can walk away. How about a person that's married, has children here, and all the rest of it? You know, Your Honor, those are considerations that the INS will take into account when Mr. Camarena goes into removal proceedings. Why can't the INS, like now, go in and have a hearing on this? Your Honor, he's not in the custody of the INS. Well, couldn't the INS ask the BOP, you know, and have a hearing in the prison? Your Honor, I'm unaware if there's any established procedure for doing that. Well, it's not a bad idea, is it? It's not a bad idea, Your Honor. But I don't believe there's an established procedure for that. I hope that I have been able to respond to the Court's questions. Unless there's anything further, I see that my time is out. Can I tell you something? Yes, sir. You're a very sweet person. Thank you very much, Your Honor. That's much appreciated. And with that, I will ask the Court to review its own precedent in Jacks and McLean, review the record on appeal, and affirm the district court. Thank you. Yeah, I'm just like my grammar school teacher when I used to get rambunctious. Okay. That's a compliment. A couple points, if I may. I believe an early release eligibility determination was made. In fact, the declaration submitted by the government sets forth that on June 5th, 1998, Dishner completed RDAP, however, he was not found to be eligible for the year-off provision until January 20th, 2000. They don't declare it to be provisionally eligible. This is the declaration submitted by the BOP. He was determined to be eligible. I don't think there should be any dispute in the record about that. He might have been eligible, but if they could, at the end, exercise their discretion, in any event, not to have him have it, but they've exercised it earlier, what's the difference? The end you're saying because he didn't complete the program? No, because in the end, whether you complete the program or not, they don't have to let you go. I don't think, looking at the rules and regulations, I think the distinction between eligibility determination and early release is one without a distinction without a difference. As the government stated, there doesn't seem to be any precedent for not allowing someone who has been determined to be eligible and then completed the program to actually get the sentence reduction. As this Court said in court, that once the determination is made and you complete the program, that's a single condition left. I think that's the practice and procedure that's been followed by the BOP. I think Judge Pegerson points out the INS delay as a big issue here. And Mr. Cameron – the record shows that Mr. Cameron actually contacted the INS several times before the – or the BOP did on his behalf several times before, saying, what's going on with my immigration status? And it was all resolved in the negative, saying you're not being deported. It wasn't until after a change in INS law in 1996, I believe, that they even decided to deport him. After they make the initial investigation letters coming out, the Supreme Court decides INS versus – or St. Cyr, the St. Cyr decision, which basically says it was wrongfully – the new law was wrongfully applied retroactively to people like Mr. Cameron. So I think when this is all said and done, when it's all washed out, the INS is not going to deport Mr. Cameron, and he's not going to have the ability – he's going to lose out on his year sentence reduction that he – that he earned, all because the INS misapplied the law at a certain point in time. Maybe they were – I'm not saying they were acting with bad motives, but the Supreme Court decided they weren't applying the law correctly, and now Mr. Cameron is going to fall in the St. Cyr exception, and he's going to be able to make that argument, and I believe he'll be successful on that. And he's going to lose his day here. And that's the other reason, going back to this delay of the INS processing his deportation and ruling on the detainer, also goes – keys into the importance of having a pre-deprivation hearing. We see how slowly the wheels of the administrative process works in the government. If Mr. Cameron is forced to appeal through the administrative process, or any inmate is forced to appeal through the administrative process, that could take years, and by the time he gets the relief, he'll have already served the sentence – the extra year that he was fighting to – to preserve. If there's no further questions at this time, I will just request the Court. Kennedy. Have you taken this pro bono? I did, Your Honor. And what firm are you with? With Munger, Tolles & Olson. Excellent job. Thank you, Your Honor. Now, don't give me a D now, teacher. That's why you're so patient. That's why. That's why you're such a good advocate for the government. We're going to take a five-minute recess. Give you a chance to get organized here. Thank you.
judges: Pregerson, McKeown,bybee